# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | NO. 3:17-cr-00056-1 |
| ) | CHIEF JUDGE CRENSHAW |
| EMMANUEL THIRKILL, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The United States of America indicted Emmanuel Thirkill on charges of (1) conspiracy to distribute and to possess with intent to distribute cocaine; (2) three counts of distribution and possession with intent to distribute cocaine within 1,000 feet of public housing; (3) possession with intent to distribute cocaine within 1,000 feet of public housing; (4) possession of a firearm in furtherance of drug trafficking; (5) possession of a firearm by a convicted felon; and (6) possession of ammunition by a convicted felon. (Doc. No. 20.) Before the Court is Thirkill's Motion to Suppress the evidence obtained by the Nashville Metropolitan ("Metro") Police Department during a search of his home. (Doc. Nos. 44.) On September 18, 2017, the Court held a hearing on the motion. For the following reasons, Defendant's motion is **DENIED**.

   I.   FACTS

On October 21, 2016, Metro Police Department Detectives witnessed through surveillance cameras Thirkill selling narcotics at 196 Charles E. Davis Boulevard, Nashville, Tennessee. (Doc. No. 44-4 at 10.) On November 3, 2016, using the surveillance cameras, Metro Police Department Detectives again observed Thirkill distributing narcotics at 196 Charles E. Davis Boulevard. (Doc. No. 44-4 at 12.) Based on this information, in addition to information regarding Thirkill's cars, on

November 8, 2016, Bureau of Alcohol, Tobacco, and Firearms Special Agent Riley O'Brien applied to United States Magistrate Judge Alistair Newbern for a tracking warrant on Thirkill's two cars.[1] (Doc. No. 44-4.) Judge Newbern granted O'Brien's application and issued a tracking warrant for each car. (Doc. No. 44-4 at 1, 3.) The tracking warrants stated that the cars were in this district, and gave O'Brien a deadline to install the tracking devices, for continual use not to exceed 45 days. (Id.) It allowed O'Brien to enter into the cars in the daytime, between 6:00 a.m. to 10:00 p.m., to install the tracking devices. (Id.) The validity of these warrants is not in question.

On November 14, 2016, at approximately 5:40 a.m., agents began surveying the area around 149 Painter Drive, Nashville, Tennessee, where the cars were parked, in preparation to install the tracking devices. (Doc. No. 44-5 at 8.) Although there was a "significant amount of daylight already present," the officers found an "opportunity to surreptitiously secure the devices," and believed that by the time the agents successfully installed the devices it would be after 6:00 a.m. (Id.) Within twenty-four hours of installing the devices, O'Brien realized that the time stamp indicated that they were installed before 6:00 a.m., and therefore outside the parameters of the warrant. (Id. at 9.) He therefore decided to stop monitoring the devices and any information gathered would not be used in the investigation. (Id.)

On November 16, 2016, O'Brien applied for a new tracking warrant on Thirkill's cars. (Doc. No. 44-5 at 4, 17.) Judge Newbern granted the applications, this time allowing agents to enter the cars to install the tracking devices "at any time in the day or night because good cause has been established." (Doc. No. 44-5 at 1, 15.) On both tracking warrants, Judge Newbern left

---

[1] For the purposes of this Opinion, the Court will refer to both cars as Thirkill's cars, although the Government concedes neither were registered to Thirkill. (Doc. No. 48 at 3.) The registration is not material for the purposes of the suppression motion because Thirkill had a reasonable expectation of privacy in the two vehicles. (Id.) Thirkill does not challenge Magistrate Judge Newbern's probable cause determination for the tracking warrants.

2

blank the date that officers must install the tracking device by, although pre-printed on the warrant included the phrase "not to exceed ten days." (Id.) The parties do not dispute that on November 22, 2016, officers attached the tracking devices, as allowed in Judge Newbern's warrant. (Doc. No. 44-1 at 3; Doc. No. 48 at 6.)

On December 6, 2016, Detective Andrew Grega of the Metro Police Department applied to a Davidson County General Sessions Judge (the "Magistrate") for a "document" warrant to search 149 Painter Drive. (Doc. No. 44-2.) In his Affidavit, Grega swore that the Tennessee Department of Safety records show 149 Painter Drive is Thirkill's home address. (Doc. No. 44-2 at 5.) He also noted that Thirkill had eight felony convictions, including attempted reckless aggravated assault, possession of marijuana, two convictions for being a convicted felon in possession of a weapon, and four convictions for possessing Schedule II drugs. (Doc. No. 44-2 at 5.)

The Affidavit indicated that Thirkill sold drugs five times at 196 Charles E. Davis Boulevard, near the JC Napier/Tony Sudekum public housing. (Doc. No. 44-2 at 5-6.) On October 21, police witnessed Thirkill sell "DB" a gram of cocaine. (Doc. No. 44-2 at 5.) DB also told officers he had previously purchased cocaine from Thirkill in the same area. (Doc. No. 44-2 at 5.) On November 3, 2016, police witnessed Thirkill sell three grams of cocaine to "JR" at the Charles E. Davis address. (Doc. No. 44-2 at 6.) On November 16, 2016, police witnessed Thirkill sell "RH" three grams of crack cocaine near the Charles E. Davis address. (Doc. No. 44-2 at 6.) On November 22, 2016, somebody called the Metro Police Department crime stoppers line to complain that Thirkill was selling crack from the Charles E. Davis address. On November 28, 2016, the Metro Police Department received a similar call on its crime stoppers line, which also included that Thirkill is a known gang member and is known to carry a firearm. (Doc. No. 44-2 at 6.)

Grega's Affidavit also discussed the tracking device police installed in Thirkill's cars. Grega swore that police observed, through the tracking devices, Thirkill travel from 149 Painter Drive to an area around the JC Napier/Tony Sudekum Public Housing. (Doc. No. 44-2 at 6.) Police also tracked Thirkill to 125 Fain Street and the 100 block of Charles E. Davis Boulevard, "where Thirkill has been recorded performing several illegal narcotics related sales." (Doc. No. 44-2 at 6.) The Affidavit noted that the tracking devices monitored Thirkill leaving and returning to 149 Painter Drive on a daily basis. (Doc. No. 44-2 at 6.) On two occasions, officers followed Thirkill to 149 Painter Drive while he was driving in vehicles in which police installed the tracking devices. (Doc. No. 44-2 at 6.) As such, Grega believed Thirkill utilized 149 Painter Drive "as a common residence." (Doc. No. 44-2 at 6.)

Based on the above facts, Grega swore that he believed Thirkill was utilizing 149 Painter Drive "to store drugs and/or drug proceeds." (Doc. No. 44-2 at 6.) He therefore sought a warrant to search the house. In doing so, Grega relied on his experience and knowledge. (Doc. No. 44-2 at 7-9.) Based on his experience, Grega believes that drug dealers often, among other things, maintain records, conceal currency, and store drugs and weapons at their residences. (Doc. No. 44-2 at 8.) Based on this information, the Magistrate issued a "document" search warrant on December 6, 2016, for 149 Painter Drive. (Doc. No. 44-2 at 1-2.) The warrant authorized detectives to search, generally, for any records that pertain to Thirkill's drug dealing, as well as firearms. (Doc. No. 44-2 at 1.)

At 1:30 p.m., the Metro Police Department Gang Unit executed the search warrant at 149 Painter Drive. (Doc. No. 48-2 at 5.) During the search, detectives located a safe in the master bedroom closet. (Id.) Inside the safe was a large bag containing five individual bags with a white substance that field tested positive for cocaine. (Id.) There were also several bundles of currency

4

in the safe, and a Glock 19 firearm under the bed. (Id.) Based on this information, as well as the information from Grega's previous Affidavit, Grega applied for and received a second "drug" search warrant from a different Davidson County General Sessions Judge. (Doc. No. 48-2 at 5.)

II. ANALYSIS

Thirkill argues that the installation of the tracking devices were illegal, and thus everything that followed should be suppressed. (Doc. No. 44-1 at 3.) In the alternative, he argues that the search warrant for 169 Painter Drive was not supported by probable cause, and therefore the evidence seized at the house and his statements after should be suppressed. (Doc. No. 44-1 at 5; 14.)

A. TRACKING WARRANT

First, Thirkill challenges the installation of the tracking devices on his cars. (Doc. No. 44-1 at 3.) He argues that the officers' six-day delay from obtaining the warrant to installing the tracking devices was unreasonable. (Doc. No. 44-1 at 5.) At the suppression hearing, Thirkill, through counsel, stated that he now believes that there is no problem with the delay in installing the tracking devices. However, out of an abundance of caution, the Court addresses his briefed arguments.

The Fourth Amendment to the United States Constitution prohibits searches and seizures without an oath or affirmation showing probable cause exists. The "Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" United States v. Jones, 565 U.S. 400, 404 (2012). "After receiving an affidavit or other information, a magistrate judge . . . must issue the warrant if there is probable cause to . . . use a tracking device." FED. R. CRIM. P. 41(d)(1). The tracking device warrant "must"

require the officer to "complete any installation authorized by the warrant within a specified time no longer than 10 days." Id. at (d)(2)(C)(i).

Delays in the execution of a search warrant can be appropriate if the search still occurs "within the time frame of the rules of procedure 'where the cause or causes of the delay could appropriately be held to be reasonable.'" United States v. Archibald, 685 F.3d 553, 559 (6th Cir. 2012)(quoting United States v. Wilson, 491 F.2d 724, 725 (6th Cir. 1974)). However, this situation is not a delay of the execution of a search warrant—it is a delay in the installation of a tracking device that will remain on the cars for forty-five days. Therefore, the concerns about the reasonableness of the delay are diminished.

The six day delay does not require suppression of any evidence. During the six days officers waited to install the tracking devices, Thirkill does not argue that probable cause dissipated or there were any intervening factors that destroyed or changed the existence of the probable cause O'Brien relied upon in obtaining the tracking devices. See Archibald, 685 F.3d at 560 (requiring a defendant to show the "changed circumstances between the issuance of the warrant and its execution that affected the presence of probable cause"). As such, Grega could rely on the information obtained through the tracking devices to establish probable cause for the search of 149 Painter Drive.

B. SEARCH WARRANT

Thirkill moves to suppress the evidence obtained from the search of 149 Painter Drive because there is no nexus between the residence and the evidence sought. (Doc. No. 44-1 at 5.) The Government argues that the Affidavit provided the Magistrate with a substantial basis to find probable cause that drugs and proceeds from the drug transactions would be located at the residence. (Doc. No. 48 at 13.) In the alternative, the Government argues that the good faith

exception to the exclusionary rule applies because the officers reasonably relied on the Magistrate's warrant. (Doc. No. 48 at 19.)

"The 'chief evil' deterred by the Fourth Amendment is the physical invasion of the home." United States v. Brown, 828 F.3d 375, 381 (6th Cir. 2016) (quoting Payton v. New York, 445 U.S. 573, 585 (1980)). To show probable cause, the officer submitting the oath or affirmation in support of the warrant must show "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Crumption, 824 F.3d 593, 615 (6th Cir. 2016). The affidavit must adequately describe a "nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).

When reviewing the sufficiency of a warrant application, district courts should afford the issuing Magistrate's probable cause determination "great deference." United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000). The court is limited to the four corners of the affidavit when reviewing the sufficiency of the evidence supporting the probable cause determination. United States v. Berry, 565 F.3d 332, 338 (6th Cir. 2009). The Court will only reverse a Magistrate's probable cause determination if it lacked a "'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

Here, the only evidence connecting 149 Painter Drive and the evidence sought—firearms and documents relating to Thirkill's drug dealing—is that Thirkill lived at 149 Painter Drive and in the officer's training and experience, he concludes that drug dealers keep that sort of evidence at their houses. The Affidavit only states that Thirkill often came and went from 149 Painter Drive, allowing for the reasonable inference that he stopped at multiple other addresses Thirkill seemed to frequent, including 125 Fain Street and 196 Charles E. Davis Avenue. Due to the ambiguity, the

Court must infer the most favorable set of facts for the defendant. See United States v. Hython, 443 F.3d 480, 486 (6th Cir. 2006) (holding that ambiguities in the warrant affidavit should be construed in favor of the defendant). If Thirkill did not come straight from his home to a drug transaction, the Court cannot infer that drugs are stored at his house. Contra United States v. Ellison, 632 F.3d 347, 349 (6th Cir. 2011) (finding that the court can infer that drugs were stored in the house when the defendant walked from his house directly to a drug transaction). The Affidavit does not suggest that Thirkill still had the proceeds with him when he went home because it only states that he was seen leaving and returning from 149 Painter Drive on a daily basis. See United States v. Brown, 828 F.3d 375, 382 (6th Cir. 2016) ("The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'"); contra Ellison, 632 F.3d at 349 (finding that the court can infer that the defendant stored proceeds from the drug transaction at his residence when the defendant walked directly from the drug transaction to the residence). The Affidavit recites that Thirkill kept ledgers or other documents relating to his drug trafficking at his house. See Carpenter, 360 F.3d at 594-95 (requiring additional facts tying marijuana in a person's yard to the house). This leaves only one "nexus" to 149 Painter Drive: that Thirkill sold drugs and slept at his house at 149 Painter Drive.

Based on the four corners of the Affidavit and giving "great deference" to the Magistrate's determination that probable cause exists, the Court nevertheless finds that there is not a specific and concrete "nexus" between the 149 Painter Drive and the drugs and drug proceeds sought. The evidence supporting the constitutionality of the search of the 149 Painter Drive include (1) that Thirkill is a confirmed drug dealer at the JC Napier public housing; (2) 149 Painter Drive is Thirkill's residence; and (3) Detective Grega's training and experience that drug dealers often store drugs and proceeds from drugs at their residence. These factors alone do not establish a specific

and concrete nexus between the drugs and drug proceeds sought and 149 Painter Drive. Compare Brown, 828 F.3d at 382-83 (finding the same three factors were not sufficient to create a nexus between the place to be searched and the evidence sought) with United States v. Gunter, 551 F.3d 472, 481 (6th Cir. 2009) (affirming the denial of a motion to suppress evidence from the defendant's residence when the quantity of drugs was one-to-four kilograms and the defendant conducted repeated transactions) and United States v. Jones, 159 F.3d 969, 974 (6th Cir. 1998) (affirming the denial of a motion to suppress evidence from the defendant's residence when the confidential informant purchased narcotics on the premises and the confidential informant observed the defendant on the premises with a quantity of cocaine for unlawful distribution).

The Government argues that because officers obtained a "document" search warrant instead of a "drug" search warrant, the officers were able to show the nexus between the house and the documents because "[p]lain common sense and life experience demonstrates that it is reasonable to believe that a person's residence contains evidence of how that person earns a livelihood." (Doc. No. 48 at 16.) By holding so, the Court would ignore over twenty years of caselaw that describes the particularity and nexus needed to search an alleged-drug dealer's house. Instead, document searches are used for document-related crimes, such as money laundering or tax fraud. See United States v. Blair, 214 F.3d 690, 697 (6th Cir. 2000) (finding a document search for a defendant being investigated for money laundering was not a "subterfuge" for a drug search warrant). For a drug crime, the agents cannot "manipulate" the system and bypass the nexus requirement simply by applying for a document search warrant. See id. at 698 (finding officers did not manipulate the system). As the Affidavit lacks a nexus between the house and the proceeds sought, it lacked a substantial basis to prove the existence of probable cause. Therefore, the search of 149 Painter Drive violated the Fourth Amendment.

C. GOOD FAITH EXCEPTION

The Government argues that the police acted in good faith in relying on the warrant, and therefore the Court should not suppress the fruits of the illegal search. (Doc. No. 48 at 19.) It argues that the officer's reliance on the warrant was objectively reasonable. (Id.)

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." Illinois v. Krull, 480 U.S. 340, 347 (1987). However, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrants." United States v. Leon, 468 U.S. 897, 922 (1984). If the search warrant contains a "minimally sufficient nexus" between the illegal activity and the place to be searched, supporting an officer's "good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause," the Court should not suppress the evidence seized from that search. United States v. Carpenter, 360 F.3d 591, 596 (6th Cir. 2004) (citing United States v. Van Shutters, 163 F.3d 331, 336 (6th Cir. 1998)).

First, the Court must determine whether the good faith exception applies. Thirkill argues it does not because a reasonable officer should have known that his Tennessee Department of Safety address is not 149 Painter Drive, but instead is 10 Garden Street. (Doc. No. 52.) Therefore, as in Franks v. Delaware, 438 U.S. 154 (1978), Thirkill argues that he has made a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause," the good faith exception does not apply.

The good faith exception does not apply when (1) "the supporting affidavit contained knowing or reckless falsity;" (2) "the issuing magistrate wholly abandoned his or her judicial role;"

(3) "the affidavit is 'so lacking in probable cause as to render official belief in its existence unreasonable;'" or (4) "where the officer's reliance on the warrant was neither in good faith nor objectively reasonable." Frazier, 423 F.3d at 533 (quoting United States v. Leon, 468 U.S. 897, 923 (1984)). Where, as here, the defendant argues that the supporting affidavit contained a knowing or reckless falsity that false statement must be "necessary to the probable cause finding in the affidavit." United States v. Rose, 714 F.3d 362, 370 (6th Cir. 2013). Here, the Department of Safety records are not necessary to the finding of probable cause. The Affidavit relied heavily on the tracking warrants to prove that Thirkill used 149 Painter Drive as a "common residence" (Doc. No. 44-2 at 6), and the Department of Safety record added little—if anything—to that discussion. As such, Thirkill is not entitled to a Franks hearing.[2]

Thirkill also argues that the Affidavit is so lacking in any indicia of probable cause that the good faith exception does not apply. (Doc. No. 44-1 at 15.) The good faith analysis "requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions" to determine whether the officer had a good-faith belief that the warrant was valid. United States v. McPhearson, 469 F.3d 518, 526 (6th Cir. 2006) (citing United States v. Laughton, 409 F.3d 744, 748-49 (6th Cir. 2005)). The Sixth Circuit has applied the good-faith exception in cases when defendants "were known to have participated previously in the type of criminal activity that the police were investigating," as well as when the officer relied "on his years of experience as a narcotics investigator and the knowledge he had acquired of drug dealers' business practices." Id. (compiling cases).

---

[2] Thirkill testified at the hearing that he lived at 149 Painter Street, and attempted to refute information about his driver's license number. Because Thirkill has not made a "strong preliminary showing" that Grega lied about a material issue in his Affidavit, the Court does not consider Thirkill's testimony as it is outside the scope of the Affidavit. Berry, 565 F.3d at 338. Thirkill also testified regarding his statements to the police and whether they should be suppressed. The Court also does not determine whether it would suppress Thirkill's statements because it denies the motion to suppress.

Here, there is a "minimally sufficient nexus" for the good faith exception to apply. The Affidavit established "particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions." It established that Thirkill is a confirmed drug dealer. Based on Grega's training and experience, drug dealers often store drugs and proceeds from drug transactions in their houses. See United States v. Washington, 380 F.3d 236, 243 (6th Cir. 2004) (finding important to the good faith analysis that the officer had reason to believe that the defendant committed a crime); United States v. Shultz, 14 F.3d 1093 (6th Cir. 1994) (same); United States v. Savoca, 761 F.2d 292 (6th Cir. 1985) (same). Officers knew that 149 Painter Drive was Thirkill's address. See United States v. Williams, 548 F.3d 311, 319 (4th Cir. 2008) (reversing the district court's granting of a suppression motion when the affidavit established that the defendant was a drug dealer and that the residence searched was the defendant's residence). As such, the Court is constrained to find that the Affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." United States v. Hodson, 543 F.3d 286, 292 (6th Cir. 2008) (citing United States v. McClain, 444 F.3d 556, 564-65 (6th Cir. 2005)). The motion to suppress is denied.

III. CONCLUSION

For the foregoing reasons, Thirkill's Motion to Suppress (Doc. Nos. 44) is **DENIED**.

The Court will issue an accompanying order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE